**DENNIS STEINMAN,** OSB No. 954250
dsteinman@kelrun.com
**SCOTT J. ALDWORTH,** OSB No. 113123
saldworth@kelrun.com
Kell, Alterman & Runstein, L.L.P.
520 S.W. Yamhill, Suite 600
Portland, OR 97204
Telephone: 503/222-3531
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

**FAIR HOUSING COUNCIL OF OREGON,**
an Oregon nonprofit corporation,

                Plaintiff,

      v.

**TRAVELERS CASUALTY AND SURETY COMPANY,** a foreign insurer; **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** a foreign insurer; **TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,** a foreign insurer; **TRAVELERS HOME AND MARINE INSURANCE COMPANY,** a foreign insurer; **TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,** a foreign insurer; **TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY,** a foreign insurer; **TRAVELERS INDEMNITY COMPANY,** a foreign insurer; **TRAVELERS INDEMNITY COMPANY OF AMERICA,** a foreign insurer; **TRAVELERS CASUALTY COMPANY,** a foreign insurer; **PROGRESSIVE INSURANCE CORPORATION, INC.,** an Oregon corporation, dba **LLOYD PURDY & CO.,** an Oregon assumed business name,

                Defendants.

3:15-cv-00925-SB

**PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Page 1 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamnill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

Defendants Travelers Home and Marine Insurance Company and Travelers Indemnity Company of America (the "Travelers Defendants") move for summary judgment on the claims brought by Plaintiff Fair Housing Council of Oregon ("FHCO"). The sole basis of the Travelers Defendants' motion is the argument that FHCO lacks standing to bring its claims. This argument is directly contrary to decades of case law in which courts have consistently recognized that fair housing organizations such as FHCO have standing to bring claims in identical circumstances. In fact, in spite of the fact that fair housing organizations bring similar fair housing claims based on discrimination revealed through testing on a fairly regular basis, the Travelers Defendants cannot cite to a single case in which a court has held that a fair housing organization lacked standing to bring claims under the Fair Housing Act ("FHA"). The Travelers Defendants' arguments are without legal merit and are contradicted by the facts in the record. As a result, the Travelers Defendants' Motion for Summary Judgment should be denied.

**Background Facts**

FHCO incorporates by reference the background facts contained in FHCO's Motion for Summary Judgment, ECF No. 57, at 3-7, and adds the following supplemental background facts.

FHCO's testing of the Travelers Defendants that underlies this case was initiated pursuant to a grant that FHCO had received from the U.S. Department of Housing and Urban Development ("HUD"). Declaration of Pegge McGuire ("McGuire Decl."), ¶ 2. Under that grant, as part of a larger statement of work that FHCO agreed to undertake, FHCO committed to conducting "at least 30 audit or complaint-driven tests of sales, lending, or homeowners insurance in the FHCO service area." Exhibit 1 to McGuire Decl., at 37. FHCO's Enforcement Coordinator, Malia Bennett, proposed devoting some of those tests to testing the compliance of homeowners insurers with the FHA's requirement to grant reasonable accommodations to

Page 2 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

individuals with disability-related assistance animals regardless of their breed. Declaration of Malia Bennett ("Bennett Decl."), ¶ 2.

Among those insurers tested were the Travelers Defendants. *Id*. The first test involving the Travelers Defendants was conducted on June 5, 2014. Exhibit 1 to the Declaration of Tester Gamma ("Gamma Decl."), ECF No. 94, at 2. A tester called the Travelers Defendants' nationally advertised toll-free phone number and spoke with a representative of the Travelers Defendants. *Id*. When the representative asked the tester if he had any pets, the tester stated that he had an assistance animal. *Id*. The representative asked what kind of animal it was and the tester said that it was a pit bull. *Id*. The representative then said that the Travelers Defendants would not be able to write a policy due to their breed restrictions. *Id*. The tester clarified that his dog was an assistance animal and asked if the breed restrictions still applied. *Id*. The representative said that they did. *Id*.

On July 9, 2014, Ms. Bennett reviewed and evaluated the tester's report. Bennett Decl., ¶ 3; Exhibit 2 to McGuire Decl. at 11. The following day, the test report was reviewed by FHCO's Enforcement Director, Hannah Callaghan. Declaration of Hannah Callaghan ("Callaghan Decl."), ¶ 2; Exhibit 2 to McGuire Decl. at 11. Ms. Bennett and Ms. Callaghan agreed that the test results demonstrated a potential violation and merited further testing of the Travelers Defendants. Bennett Decl., ¶ 3; Callaghan Decl., ¶ 2. If the test results had shown that the Travelers Defendants had agreed to waive their breed restriction policy for the assistance animal, or that the Travelers Defendants had engaged in an interactive process with the tester to determine if the accommodation could be granted, FHCO would have ceased testing of the Travelers Defendants and been able to use the HUD funding to conduct testing on other entities subject to the FHA. *Id*.

Page 3 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

Because the test showed that the Travelers Defendants had refused to waive their breed restriction policy, however, FHCO moved forward with conducting another test of the Travelers Defendants. Bennett Decl., ¶ 4. The second test was conducted on July 24, 2014. Exhibit 1 to the Declaration of Tester Delta ("Tester Delta Decl."), ECF No. 93, at 2. Again, a tester called the Travelers Defendants' nationally advertised toll-free phone number and spoke with a representative of the Travelers Defendants. *Id*. Again, the representative asked the tester if she had any pets and the tester said that she had an assistance animal. *Id*. The representative asked what kind of animal it was and the tester said that it was a pit bull. *Id*. The representative said that they usually do not cover pit bulls, but "since it was an assistance animal, there might be an exception, but she would have to check with a supervisor." *Id*. The representative put the tester on hold and, when she came back, told the tester that their breed restriction policy would not allow them to cover the pit bull. *Id*. The representative explained that "they have a list of breeds that are known for vicious or dangerous behavior and they won't cover any of them." *Id*. The representative then said, "your dog may be the sweetest animal, but if it's on the list, we don't cover it." *Id*. The tester stated that her dog was sweet and very well-trained. *Id*. The representative stated that "she would assume so if he was an assistance animal, but that was their policy." *Id*.

Ms. Bennett and Ms. Callaghan reviewed and evaluated the second test on August 13, 2014. Bennett Decl., ¶ 5; Callaghan Decl., ¶ 3; Exhibit 2 to McGuire Decl., at 10. They concluded that the second test also demonstrated a potential violation of the FHA and decided to conduct additional testing of the Travelers Defendants. Bennett Decl., ¶ 5; Callaghan Decl., ¶ 3. As described in FHCO's Motion for Summary Judgment, FHCO conducted a third test October 8, 2014, and a fourth test on December 3, 2014. Exhibit 1 to the Declaration of Tester Alpha ("Tester Alpha Decl."), ECF No. 60, at 2; Exhibit 1 to the Declaration of Tester Beta ("Tester

Page 4 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone:  (503) 222-3531

Beta Decl."), ECF No. 61, at 2. In each of those tests, the Travelers Defendants' agents told the testers that the breed restriction policy could not be waived for the testers' assistance animals. *Id*.

During the course of testing and prior to the time that this case was filed, Ms. Bennett and Ms. Callaghan logged 25.65 hours on the case, devoted primarily to creating the tests, evaluating the tests, and conducting research. Exhibit 2 to McGuire Decl., at 7-11. The case log shows that some of this time was billed to "1360"—which is the identifying number of the HUD grant—and some of this time was billed to "Litigation (400)." *Id*.; McGuire Decl., ¶ 3. "Litigation (400)" is FHCO's internal coding that refers to its general, discretionary fund. McGuire Decl., ¶ 3. The discretionary fund is not only used for pre-filing activities but is also generally used for activities, such as trainings or other outreach activities, that are not funded by grants. *Id*. Ms. Callaghan's time sheets confirm that the time that she allocated to FHCO's discretionary fund was billed to that fund. Exhibit 1 to Callaghan Decl.; Callaghan Decl., ¶ 4.

In addition to staff time spent related to the case, the investigation of the Travelers Defendants has caused FHCO to divert its resources in a number of other ways. First, payments to the testers who conducted the testing of the Travelers Defendants total $525. Exhibit 3 to the McGuire Decl. FHCO also plans to conduct three remedial outreach and education seminars to counteract the Travelers Defendants' discriminatory actions. McGuire Decl., ¶ 5. FHCO estimates the total cost of those seminars to be $4,320. *Id*. FHCO also intends to conduct biannual testing of the Travelers Defendants for a period of three years to determine its continued compliance with the FHA. *Id*. at ¶ 6. FHCO estimates that the total cost to design and conduct those tests is $5,742. *Id*.

Finally, the time spent on this case has caused FHCO to divert its time and resources from other projects. First, FHCO had an obligation under the HUD grant to develop and implement a

Page 5 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>

strategy for the regular review of building permits throughout Oregon, which would assist FHCO in ensuring that the FHA's design and construction standards were being met in all new multi-family residential construction. McGuire Decl., ¶ 7; Exhibit 1 to McGuire Decl., at 11. Because of the time spent on the investigation of the Travelers Defendants, FHCO was not able to complete this task in 2014, as required by the grant, and had to obtain permission from HUD to split the task between 2014 and 2015. McGuire Decl., ¶ 7; Exhibit 1 to McGuire Decl., at 12.

Second, FHCO desired to undertake monitoring of Craigslist and other rental advertising to determine whether landlords were complying with a new Oregon law that prohibited discrimination based on an individual's source of income. McGuire Decl., ¶ 8. Because this protected class is only covered by state law, this activity could not be performed under a HUD grant and would likely have been paid for out of FHCO's general, discretionary fund. *Id*. Because of the time and resources spent on the investigation of the Travelers Defendants, FHCO was not able to undertake this project. *Id*.

Third, in anticipation of Ms. Callaghan's future retirement, FHCO intended to devote approximately four hours per week to Ms. Callaghan training Ms. Bennett so that Ms. Bennett would be able to step into the Enforcement Director position. Callaghan Decl., ¶ 5. While a certain amount of Ms. Bennett's time was allotted to performing the testing required by the HUD grant, the amount of time that Ms. Bennett and Ms. Callaghan had to devote to the investigation of the Travelers Defendants was greater than they had planned for. *Id*.; Bennett Decl., ¶ 6. This is because tests that indicate unlawful housing practices, such as the testing of the Travelers Defendants, take more time to analyze, necessitate the development and implementation of additional testing of the subject, and often require legal research to determine whether legal action is warranted. *Id*. The additional time that Ms. Bennett and Ms. Callaghan needed to

Page 6 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

devote to the investigation of the Travelers Defendants prevented them from devoting that time to Ms. Bennett's training. *Id*.

Because the testing of the Travelers Defendants indicated that they were not complying with the FHA, which directly frustrated FHCO's organizational mission of the elimination of housing discrimination, and because the Travelers Defendants' actions caused FHCO to suffer a diversion of its resources, FHCO brought this case.

## Legal Standard

Summary judgment is appropriate if "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are disputed facts whose resolution will affect the outcome of the suit under substantive law. *Id*. at 248. The moving party must first meet its burden to show "the absence of a genuine issue concerning any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970). To satisfy this burden, the moving party must present the portions of the record that demonstrate there is no issue of material fact. *Celotex Corp. v. Cartett*, 477 U.S. 317, 323 (1986). In evaluating a motion for summary judgment, the court must "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999).

The court views evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). Only a "[f]ailure to allege 'specific facts' that establish the existence of a *prima facie* case renders a grant of summary judgment appropriate." *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1409 (9th Cir. 1987) (citation omitted).

Page 7 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamnill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

**Argument**

A.     **FHCO has Standing to Bring its Claims.**

"The Supreme Court has long held that claims brought under the Fair Housing Act are to be judged under a very liberal standing requirement." *Harris v. Itzhaki*, 183 F.3d 1043, 1049 (9th Cir. 1999). "Unlike actions brought under other provisions of civil rights law, under the FHA the plaintiff need not allege that he or she was a victim of discrimination…. Rather, the sole requirement for standing under the Act is the Article III minima of injury in fact. To meet this requirement, a plaintiff need only allege that as a result of the defendant's discriminatory conduct he has suffered a distinct and palpable injury." *Id*. at 1049-50 (internal citations omitted).

"Fair housing agencies…have broad standing to assert claims under the FHA based on the discrimination experienced by other individuals, including testers posing as prospective tenants." *S. Cal. Hous. Rights Ctr. v. Krug*, 564 F. Supp. 2d 1138, 1149 (C.D. Cal. 2007). A fair housing organization such as FHCO meets the Article III injury requirement if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question. *Fair Housing of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir. 2002), *cert denied*, 537 U.S. 1018 (2002).

The Travelers Defendants' arguments that FHCO has not met these minimum standing requirements are without a basis in law. The Travelers Defendants turn the frustration of mission requirement on its head, claiming that the Travelers Defendants' discriminatory actions actually somehow furthered FHCO's mission. In claiming that FHCO has not diverted any resources, the Travelers Defendants misrepresent evidence in the record and rely on arguments that have routinely been rejected by every court that has considered them. In spite of numerous cases brought by fair housing organizations (including FHCO) in analogous circumstances, the

Page 8 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamnill Street,
Portland, OR 97204-1329
Telephone:  (503) 222-3531

Travelers Defendants cannot cite to a single case in which a court has held that a fair housing organization such as FHCO lacked standing to bring claims alleging violations of the FHA. The Travelers Defendants' motion is without merit and should be denied.

1. The Travelers Defendants' Actions Have Frustrated FHCO's Organizational Mission

In a similar case, the Ninth Circuit considered a challenge to the standing of a fair housing organization with an organizational mission of eliminating housing discrimination. *Smith v. Pacific Props. and Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). The court determined that "*[a]ny* violation of the FHAA would … constitute a 'frustration of [the housing organization's] mission.'" *Id*. (emphasis added).

Here, FHCO's organizational mission is also the elimination of housing discrimination. McGuire Decl., ¶ 1. As a result, any violation of the FHA is a frustration of FHCO's organizational mission. As established by FHCO's Motion for Summary Judgment, the actions of the Travelers Defendants violated the FHA. Therefore, FHCO has met the first standing requirement.

The Travelers Defendants' argument to the contrary is based on a fundamental misunderstanding of what this requirement means. The Travelers Defendants argue that, because the testing was undertaken pursuant to the HUD grant, the tests helped FHCO comply with its obligations under the grant and, therefore, actually furthered FHCO's mission. Travelers' Motion for Summary Judgment ("The Travelers Defendants' Motion"), ECF No. 84, at 23. The focus of this argument is misdirected and it would lead to a ludicrous result.

The question is not whether FHCO furthered its mission by undertaking the testing; the question is whether the Travelers Defendants' actions frustrated FHCO's mission of the elimination of housing discrimination. *Smith*, 358 F.3d at 1105. Under the Travelers

Page 9 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

Defendants' argument, FHCO would *never* have standing to bring a claim when testing revealed discrimination because the testing itself would be in furtherance of FHCO's mission. Likewise, FHCO would *never* have standing to bring a claim based on any actions taken under a HUD grant because those actions would be in fulfillment of that grant. The Travelers Defendants reading of the frustration of mission requirement would deprive FHCO of ever having standing, is directly contrary to well-settled case law, and should be rejected.

The Travelers Defendants also argue that their actions could not have frustrated FHCO's mission because FHCO has not identified any disabled individuals who have been denied insurance by the Travelers Defendants due to their ownership of a pit bull assistance animal. The Travelers Defendants' Motion, at 24. This argument has also been squarely rejected: "Under the [FHA], any person harmed by discrimination, *whether or not the target of the discrimination*, can sue to recover for his or her own injury. 'This is true, for example, even where no housing has actually been denied to persons protected under the Act.'" *Harris*, 183 F.3d at 1050 (emphasis in original), quoting *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 475 (9th Cir. 1998). The fact that FHCO has standing even though it only has evidence of discrimination against its own testers is consistent with the recognized role of testers of "collecting evidence of unlawful" practices. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982). FHCO uses testers to stand in the shoes of members of the general public to find out if unlawful discrimination is occurring but going unreported. Bennett Decl., ¶ 2. The fact that FHCO only has evidence of discrimination against its testers does not negate the fact that the Travelers Defendants engaged in unlawful housing practices, which necessarily frustrates FHCO's mission of eliminating housing discrimination. *Smith*, 358 F.3d at 1105. The fact that FHCO's claims are based entirely on the Travelers Defendants' actions towards testers does not affect FHCO's standing to bring this case.

Page 10 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

The Travelers Defendants cannot meet their burden of proving as a matter of law that FHCO has not suffered a frustration of its organizational mission as a result of the Travelers Defendants' actions. To the contrary, FHCO has demonstrated that it has suffered a frustration of its organizational mission. As a result, the Travelers Defendants' Motion for Summary Judgment should be denied.

> 2. FHCO has suffered a diversion of its resources as a result of the Travelers Defendants' actions.

There are a number of ways in which FHCO has diverted its resources. It had to train the testers and pay them for carrying out the tests. McGuire Decl., ¶ 4; Exhibit 3 to the McGuire Decl. It has had to pay for staff time—and divert staff time away from other projects—to develop and analyze the tests. *Id.*; Exhibit 2 to McGuire Decl.; Exhibit 1 to Callaghan Decl. It also anticipates undertaking remedial outreach and education efforts to combat the unlawful policy enforced by the Travelers Defendants. McGuire Decl., ¶ 5. Finally, FHCO intends to conduct monitoring of the Travelers Defendants in the future to ensure that they are complying with the FHA. *Id.*, ¶ 6.

The Ninth Circuit has repeatedly held that the diversion of resources requirement is met in similar circumstances involving fair housing organizations. *See e.g. Fair Housing of Marin*, 285 F.3d at 905 (finding diversion of resources based on "economic losses in staff pay, in funds expended in support of volunteer services, and in the inability to undertake other efforts to end unlawful housing practices"); *see also S. Cal. Hous. Rights Ctr.*, 564 F. Supp. 2d at 1149, citing *Havens*, 455 U.S. at 379, *Fair Housing of Marin*, 285 F.3d at 905 ("Where a fair housing agency conducts tests or other investigatory measures to identify unlawful housing discrimination, the agency suffers a redressable injury in court because its resources have been diverted and its mission to eliminate housing discrimination has been frustrated.").

Page 11 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

In another case involving FHCO, this Court denied a defendant's motion for summary judgment challenging FHCO's standing to bring a similar claim. *Fair Hous. Council of Or. v. Brookside Vill. Owners Ass'n*, 2012 U.S. Dist. LEXIS 188004, at *37-38 (D. Or. Oct. 19, 2012). In that case, FHCO identified many of the same types of diversion of resources as it has identified here: staff pay, tester pay, and estimated costs for future education and outreach. *Id*. Although the Court questioned the amount of damages sought by FHCO, it found that these were sufficient diversions of resources to support standing:

> Some of those pre-litigation costs, particularly the $2,448.00 in tester training and recruitment, appear excessive in light of the fact that the particular testers were already trained. However, this does not obviate the need for reimbursing FHCO for the cost of at least some training. Furthermore, time and money spent investigating potential discrimination do not negate standing simply because they relate to the development of a lawsuit. They also can be regarded as an independent activity associated with the identification and counteraction of the defendants' discriminatory practices. Admittedly, the amount of investigation costs incurred by FHCO is small, but standing does not require a minimum amount of resources to be diverted from counseling and referral to litigation….FHCA [*sic*] also relies on estimated costs for remedial educational outreach and enforcement. These costs seem quite high….However, the Ninth Circuit requires only that an organization establish that it must divert resources to counteract the problem caused by the defendant's discriminatory practices. *Combs*, 285 F3d at 905. FHCO has done so.

*Brookside Vill. Owners Ass'n*, 2012 U.S. Dist. LEXIS 188004, at *38-39.

Indeed, in addition to the *Brookside Vill. Owners Ass'n* case, this Court has repeatedly found in similar circumstances that FHCO had suffered a diversion of resources sufficient to confer standing to bring claims based on alleged violations of the FHA. *Avakina v. Chandler Apts., LLC*, 2015 U.S. Dist. LEXIS 10783, at *10-12 (D. Or. Jan. 30, 2015); *McVick, LLC v.*

Page 12 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

*United States HUD*, 2012 U.S. Dist. LEXIS 161100, at *8-9 (D. Or. Nov. 8, 2012); *United States v. Hadlock*, 2010 U.S. Dist. LEXIS 8226, at *15-16 (D. Or. Jan. 27, 2010).

The Travelers Defendants cannot meet their burden of proving that FHCO has not suffered a diversion of its resources as a result of the Travelers Defendants' actions. To the contrary, there is no genuine issue of material fact that FHCO has suffered a diversion of its resources. Each of the arguments raised by the Travelers Defendants is without merit and should be rejected.

>    (a)    The fact that FHCO's investigation of the Travelers Defendants was partially funded by a HUD grant does not affect FHCO's standing to bring this case.

The primary argument raised by the Travelers Defendants is that FHCO has not suffered a diversion of its resources because much of its testing and investigation of the Travelers Defendants was paid for by funding obtained through a HUD grant. The Travelers Defendants' Motion, at 14-16. This argument is without merit for a number of reasons. First, the only court that has addressed such an argument has roundly rejected it. *Nat'l Fair Hous. Alliance v. Prudential Ins. Co. of Am.*, 208 F. Supp. 2d 46, 54 (D.D.C. 2002). In that case, the defendants argued that the plaintiff fair housing organization could not have suffered an injury for purposes of standing because it was "funded through federal HUD grants and prior litigation settlements." *Id*. The court rejected this argument, stated that there was no legal support for such a theory, and characterized it as "an argument that borders both on the offensive and absurd." *Id*.

Second, FHCO did not exclusively use HUD funding in its investigation of Defendants, but also relied on its general discretionary fund. McGuire Decl., ¶ 3; Callaghan Decl., ¶ 4; Exhibit 2 to McGuire Decl., at 7-9; Exhibit 1 to Callaghan Decl. While the amount of staff time charged to its general fund was comparatively small, it is sufficient to establish an injury for

Page 13 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

purposes of standing. *Brookside Vill. Owners Ass'n*, 2012 U.S. Dist. LEXIS 188004, at *38-39 (finding a small amount of investigation costs was sufficient for FHCO to establish standing and noting that "standing does not require a minimum amount of resources to be diverted from counseling and referral to litigation"). The Travelers Defendants disingenuously claim that the time billed to the discretionary fund are "solely litigation costs" because the time entries show that the time was charged to "Litigation (400)." The Travelers Defendants' Motion, at 21 n.16. As the Travelers Defendants are well-aware, "Litigation (400)" is simply FHCO's internal coding for its discretionary fund. Exhibit B to the Declaration of Ron Clark ("Clark Decl."), ECF No. 85, at 226:4-12; McGuire Decl., ¶ 3. Those time entries were from well before this litigation was filed and related to the investigation of the Travelers Defendants. Exhibit 2 to McGuire Decl., at 7-9. These expenses out of FHCO's discretionary fund alone—and, therefore, apart from other outreach activities that FHCO might have performed—are sufficient to establish a diversion of resources.

Additionally, the cost of planned monitoring and outreach would be borne by FHCO and would not be covered by any HUD grant. McGuire Decl., ¶¶ 5-6. The Travelers Defendants argue that these future planned activities cannot be used to show diversion of resources because FHCO has not expended those funds yet. The Travelers Defendants' Motion, at 21-23. However, this Court and the Ninth Circuit have explicitly identified these types of future expenses as a legitimate diversion of resources supporting standing in identical circumstances. *Brookside Vill. Owners Ass'n*, 2012 U.S. Dist. LEXIS 188004, at *38-39; *Fair Housing of Marin*, 285 F.3d at 905; *see also Fair Hous. of Marin v. Combs*, 2000 U.S. Dist. LEXIS 4737, at *12-13 (N.D. Cal. Mar. 29, 2000) (explicitly stating that costs for outreach were only "envisioned" and had not been expended yet). These planned expenses, which are entirely unrelated to HUD funding, are also sufficient to establish a diversion of FHCO's resources.

Page 14 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

Finally, even if FHCO did rely exclusively on HUD funding (which it did not), it was still injured by the time and expenses that it devoted to its investigation of the Travelers Defendants. No court has ever held that a fair housing organization's source of funding was relevant to the question of whether it had suffered an injury and a diversion of its resources. To the contrary, numerous courts, in addressing the related issue of damages, have held that a fair housing organization's sources of funding for conducting the activities that led to the case is irrelevant. *S. Cal. Hous. Rights Ctr.*, 564 F. Supp. 2d at 1152 (stating that the fair housing organization's damages should not be offset by government grants it receives because, under the collateral source rule, "a tort award should not be offset by compensation that a plaintiff receives from another source"); *Baltimore Neighborhoods, Inc. v. LOB, Inc.*, 92 F. Supp. 2d 456, 465 n.9 (D. Md. 2000) (holding that a fair housing organization's damages should not be offset by federal grants it received because "[t]he grant was not awarded to compensate [the fair housing organization] for the costs it incurred counteracting defendant's discriminatory practices. While [the fair housing organization] used the grant for that purpose, it could have been used for another purpose."); *Miami Valley Fair Hous. Ctr. v. Connor Grp.*, 2015 U.S. Dist. LEXIS 173358, at *17-18 (S.D. Ohio Dec. 31, 2015) (stating that the defendant's argument "that tasks routinely performed by Plaintiff in connection with executing its duties under the terms of one or more grants, such as the monitoring of advertising, the filing of complaints of discrimination, or the creation of educational materials, are not compensable…is incorrect" and that "regardless of the nature of the task, Plaintiff may recover damages if it proves that the action it took was fairly traceable to the" unlawful conduct). Simply put, if the first test of the Travelers Defendants had shown that they were complying with the FHA, FHCO would not have conducted follow up testing and could have used the HUD funding to test additional companies and broaden its efforts

Page 15 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

to ensure compliance with the FHA. This constitutes a diversion of FHCO's resources for purposes of standing.

The Travelers Defendants' argument that FHCO has not suffered a diversion of its resources because the testing was primarily funded by a HUD grant is not supported by the law or the actual facts underlying this case. This argument should be rejected and the Travelers Defendants' Motion for Summary Judgment should be denied.

> (b) The Travelers Defendants' arguments regarding specific projects that FHCO could not perform are based on a misrepresentation of the facts in the record.

As stated above, there are specific projects that FHCO has been unable to perform due to its investigation of the Travelers Defendants, including monitoring of building permits, monitoring of Craigslist advertising, and training of Ms. Bennett. McGuire Decl., ¶¶ 7-8; Callaghan Decl., ¶ 5. The Travelers Defendants dispute FHCO's claims with respect to each of these projects. The Travelers Defendants' Motion, at 16-21. However, their arguments are without merit and based on a misrepresentation of the facts in the record.

As an initial matter, the dispute regarding these specific projects is a red herring because, as outlined at length above, FHCO has already identified a sufficient diversion of its resources to support standing. No court has ever held that a fair housing organization, after showing that its resources were diverted as a result of the defendant's actions, must then identify specific projects that it would have performed if such a diversion of resources has not occurred. FHCO has established that it has diverted funds that could have been used for other enforcement activities; the exact activities that it would have performed is irrelevant to the question of standing.

Even if the Court were to consider these other activities, however, the Travelers Defendants' arguments are without merit. First, the Travelers Defendants argue that FHCO did

Page 16 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamnill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

not divert resources away from monitoring building permits because FHCO completed its grant deliverable related to this monitoring for 2014. *Id*. at 16-17. However, the Travelers Defendants ignore the fact that the deliverable had to be modified and split up over 2014 and 2015 because FHCO was not able to complete this task. Exhibit 1 McGuire Decl., at 12. FHCO only completed the smaller portion of the modified deliverable for 2014 because it did not have the time or resources to complete the entire deliverable that had originally been promised. McGuire Decl., ¶ 7. As a result, the Travelers Defendants' argument with respect to the monitoring of building permits is without merit.

Second, the Travelers Defendants argue that FHCO could not have diverted resources away from the monitoring of Craigslist advertising because it did not have grant funding or a proposed deliverable related to such monitoring. The Travelers Defendants' Motion, at 18-19. This argument ignores the fact that FHCO could have paid for such monitoring out of its general, discretionary fund (which FHCO had diverted money away from and towards the investigation of the Travelers Defendants). McGuire Decl., ¶ 8. Further, the fact that FHCO did not have the staff time available to develop a specific plan for the monitoring was a direct result of staff time being redirected to projects like the investigation of the Travelers Defendants. *Id*. The Travelers Defendants' argument regarding the monitoring of Craigslist advertising is without merit.

Third, the Travelers Defendants argue that FHCO could not have diverted resources away from the training of Ms. Bennett. The Travelers Defendants' Motion, at 19-21. They argue that resources could not have been diverted to the testing of the Travelers Defendants because the testing was done pursuant to the HUD grant and Ms. Bennett's time was already allotted to fulfilling FHCO's grant obligations. *Id*. at 19-20. However, this ignores the fact that Ms. Bennett had to spend a great deal more time on the testing of the Travelers Defendants than she would have if the initial test had shown compliance with the FHA. Bennett Decl., ¶ 6. If the first

Page 17 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

test had not indicated unlawful discrimination, Ms. Bennett could have fulfilled that grant obligation and still had time to participate in training. The Travelers Defendants also dispute FHCO's claim because Ms. McGuire testified that Ms. Callaghan was unable to complete approximately 80 hours of training, while the time logs show only 19 hours devoted to the testing of the Travelers Defendants. The Travelers Defendants' Motion, at 20-21. However, the fact that the testing of the Travelers Defendants was not the *only* diversion of resources away from Ms. Bennett's training does not mean that the testing did not divert *any* resources away from the training. The fact that other projects also caused Ms. Bennett to receive less training does not in any way negate the fact that the testing of the Travelers Defendants directly reduced the time that Ms. Bennett had to receive training. The Travelers Defendants' argument regarding Ms. Bennett's training is without merit.

Each of the arguments raised by the Travelers Defendants is contrary to the evidence in the record and without merit. The Travelers Defendants have not met their burden of proving as a matter of law that FHCO lacks standing to bring this case. To the contrary, the undisputed facts establish that FHCO does have standing. As a result, the Travelers Defendants' Motion for Summary Judgment should be denied.

## Conclusion

For the reasons discussed herein, the Travelers Defendants' Motion for Summary Judgment should be denied.

DATED this 20th day of July, 2016.

KELL, ALTERMAN & RUNSTEIN, L.L.P.

s/Dennis Steinman

Page 18 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

**DENNIS STEINMAN,** OSB #954250
503/222-3531
dsteinman@kelrun.com

Page 19 – PLAINTIFF'S RESPONSE TO THE TRAVELERS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
Suite 600
520 S.W. Yamhill Street,
Portland, OR 97204-1329
Telephone: (503) 222-3531

Case 3:15-cv-00925-SB   Document 98   Filed 07/20/16   Page 20 of 20

CERTIFICATE OF SERVICE